**THE D. S. DUMPER NO. 305.**

**THE CITY OF TOKIO.**

**THE HENRY W. CARD.**

**CITY OF NEW YORK v. VIRGINIA TOWING CORPORATION.**

No. 13863.

District Court, E. D. New York.

Dec. 31, 1934.

Paul Windels, Corp. Counsel, of New York City (Willard L. Robinson, Asst. Corp. Counsel, of New York City, of counsel), for City of New York.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine and A. V. Cherbonnier, both of New York City, of counsel), for the City of Tokio.

Foley & Martin, of New York City (James A. Martin, of New York City, of counsel), for the Henry W. Card and Virginia Towing Corporation.

**GALSTON, District Judge.**

On April 13, 1933, the Dumper 305, owned by the City of New York, in tow of the tug Henry W. Card, proceeded from Fort Hamilton up the channel towards Pier 69 on the Brooklyn side of the East River. The Card had the Dumper 310 on her port side, the Dumper 305 being behind the 310, and another dumper, 205, was on the starboard side of the Card.

As the tow proceeded up the channel, the tug Du Bois overtook and passed it somewhat in the vicinity of Bay Ridge avenue. Coming down the channel was the steamship Tokio, and when first observed by the master of the Card, was about three-quarters of a mile away.

The steamer blew a two-whistle signal, and this was answered by the Du Bois, as the master on the Card admitted. At that time the Du Bois was 400 feet ahead of the Card and about 200 feet on the Card's port side. After hearing the two whistles ex-

changed between the steamer and the Du Bois, the Card blew one whistle, and receiving no reply, twice repeated that signal. Meanwhile, the Card endeavored to round to towards the Brooklyn shore, and the steamer came on striking the Dumper 305 on her port stern quarter and sinking her, having first sought to avoid collision by dropping her anchor. However, she traveled about 500 feet before she was brought up by her anchor. Just before the collision the Tokio had sheered to starboard, across the channel.

It is significant that after the master of the Card heard the exchange of the two-whistle signals between the Du Bois and the Tokio, the Card started over towards Bay Ridge avenue and then signaled the steamer with one whistle. Thus it must have been the expectation of the Card that the Tokio would pass between the Card and the Du Bois, though there was no acceptance of the Card's signal. The tide was flood, and the effect of rounding to Bay Ridge avenue was to swing the tail-scow on the port side.

The Card's story is that the Tokio held her course coming down the middle of the channel and made no change until she was about 500 feet away, at which point she headed for the Brooklyn shore.

The version of the accident as given by Spurring, the captain of the steamship City of Tokio shows that the steamer was partly loaded with general cargo and was leaving her berth at the Bush Docks in Brooklyn at about 7 o'clock in the evening. She backed out stern first with the assistance of two tugs, one forward and one aft. After she was straightened out on her channel course, the tug and harbor pilot left the steamship at about 7:18 p. m. and the sea pilot took charge. On the bridge were the master, the sea pilot, the third officer, and the quartermaster. Forward were the chief officer, carpenter, look-out man and the boatswain.

The City of Tokio was proceeding down the Bay Ridge Channel on the western side of the center line, steering not by compass, but according to the pilot's orders, in relation to the visible lights. The steamer carried two mast headlights, port and starboard side lights, and stern lights.

The tug Card and her tow were first observed at 7:18 p. m., the Card showing two white lights and a green light, and was about five degrees on the steamer's starboard bow distant a mile to a mile and a half away.

Proceeding ahead of the Card and to the west was the tug Du Bois, distant about three-quarters of a mile, and bearing two points on the steamer's starboard bow and about three lengths in front of the Card. The Du Bois showed her mast headlights and green side light.

On seeing the Card, the Tokio gave two short blasts and altered her course slightly to port to give the Card a wider berth. A reply of two signals was received within a few seconds after the Tokio's signal, the Card maintaining her course. Spurring assumed that the reply had come from the Card since she was the closest vessel to the Tokio's course. Then some two or three minutes after, the Card appeared to alter her course, shutting her green light and opening the red light, whereupon she blew one short blast to which the City of Tokio responded with an alarm signal. On seeing the Card alter her course to starboard, the Tokio stopped and reversed her engines, putting the helm hard to starboard, and let go the starboard anchor. The anchor was dropped at 7:26 p. m.

The collision, however, was inevitable. At the time of the collision the Card was heading to the eastward of the center line of the channel. Spurring also says that the Card must have been more than halfway across the channel and at least 700 feet off the Brooklyn shore at the place of collision.

Mattisen, the captain of the Du Bois does not add very much to the clarification of the situation. He received a two-whistle signal from the steamer and saw at that time her two side lights and the range lights. The Du Bois answered with two signals. At that time the Card was 400 feet astern of the Du Bois on her starboard side. This witness heard the Card give a one-whistle signal, repeated twice, none of which was answered by the Tokio. It appeared to Mattisen that at this time both vessels were in the middle of the channel. The Tokio dropped her anchor when abreast or somewhat astern of the Du Bois and at a distance of about seven or eight hundred feet from the Card. The collision took place on the easterly side of the channel somewhat to the south of the Sixty-Ninth Street Dock.

The judgment of this witness was that if the steamer had slowed down there would have been room to let the Card go either way. Nevertheless, Mattisen saw the Card heading toward the Brooklyn shore and he

admitted that she must have started to swing before she gave a one-blast signal.

In respect to speeds, at some time prior to the collision the Card was making four miles an hour through the water, as estimated by her captain. The tide was flood and, therefore, running with the Card at an average velocity of one mile. Consequently, the Card and her tow approached the steamer at a speed of about five miles an hour. It is apparent that the headway of the tug over the ground and her turning maneuver on the flood tide tended to set the Card and her tow to the northward and carried the tow towards the steamer with very substantial momentum; on the other hand, the Tokio was going down the channel hooked up.

Both vessels were at fault. The Card had no right to assume that the Tokio could with safety pass between the Du Bois and herself, and having heard the two-whistle exchange, there could have been no doubt in the mind of the master of the Card that the passage as between those two vessels was to be starboard to starboard. Wise maneuvering on his part, particularly after his failure to get a response to his one-whistle signal, dictated that he should have held to the westerly side of the channel. Without an agreement as to passage, he had no right to swing to the Brooklyn shore.

Equally clearly, it appears that the pilot on the Tokio was not in any way justified in believing that the answer to his two-whistle signal came from the Card. It was more reasonable to believe that it was given by the Du Bois. I agree that his assumption that the whistle came from the Card is unreasonable; and the testimony of witnesses such as that of Folkes on the City Dumper No. 305, of Hine, an inspector for the Supervisor of Harbors who was on the tug, and of Mattisen of the Du Bois, can leave no doubt that the Card actually sounded signals calling for a port to port passing. When the Tokio saw two approaching vessels, she should have required answers from both of them. Both vessels too should have reduced their speeds. Apparently neither did within the safety limit.

The libelant may have a decree against both claimants.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.